# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

|  |  |
|---|---|
| **BOXOFFICETOO, INC.**, a Florida corporation, | **CIVIL ACTION** |
| Plaintiff, |  |
| v. | **Case No.  2:21-cv-717** |
| **TYLER SHAPIRO**, an individual, **ANTHONY SHAPIRO**, an individual, and **NEWERA TIX, LLC**, an Illinois limited liability company, | **Judge:** |
|  | **Mag. Judge:** |
| Defendants. | <u>**INJUNCTIVE RELIEF REQUESTED**</u> |

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

**NOW COMES** the Plaintiff, **BOXOFFICETOO, INC.** ("Plaintiff") by and through its undersigned counsel, and states the following for its Complaint:

## <u>CAUSES OF ACTION</u>

1.      This is an action brought under 18 U.S.C. §1030, Florida law and Florida common law for (1) breach of contract, (2) violations of the federal Computer Fraud & Abuse Act, (3) theft of trade secrets, (4) breach of duty of loyalty, (5) tortious interference, and (6) injunctive relief.

## <u>PARTIES</u>

2.      The Plaintiff, **BOXOFFICETOO, INC.,** is a Florida corporation located in Lee County, Florida. The Plaintiff is in the business of selling tickets on

the secondary market to a wide array of sports and entertainment events throughout North America. Over the course of years, the Plaintiff has honed its business model by utilizing a proprietary method for obtaining tickets to some of the most exclusive events, including the Super Bowl, Stanley Cup Finals, NBA Finals, World Series and marquee performing arts events. To be profitable, the Plaintiff utilizes a strategic and unique pricing model that its holds in strict secrecy.

3.     Defendant **TYLER SHAPIRO** is an individual domiciled in the State of Illinois. The Plaintiff hired **TYLER SHAPIRO** on or about November 2, 2019 as its "Director of Inventory and Analytics." **TYLER SHAPIRO** performed work for the Defendant in Lee County, Florida, where the Defendant's computer systems are located, which is within the Middle District of Florida, during the events giving rise to this case. **TYLER SHAPIRO** also attended work meetings and physically performed work for the Plaintiff in Lee County, Florida. The damages caused by **TYLER SHAPIRO** have also been caused in Lee, County, Florida. Venue for this action lies in the Middle District of Florida, Fort Myers Division.

4.     Defendant **ANTHONY SHAPIRO** is an individual domiciled in the State of Illinois. The Plaintiff hired **ANTHONY SHAPIRO** on or about April 28, 2021 as a "Director of Inventory and Analytics." **ANTHONY SHAPIRO** performed work for the Defendant in Lee County, Florida, where the Defendant's computer systems are located, which is within the Middle District of Florida, during the events giving rise to this case. **ANTHONY SHAPIRO** also attended

work meetings and physically performed work for the Plaintiff in Lee County, Florida. The damages caused by **ANTHONY SHAPIRO** have also been caused in Lee, County, Florida. Venue for this action lies in the Middle District of Florida, Fort Myers Division.

5.      Defendant **NEWERA TIX, LLC** is an Illinois limited liability company formed on March 26, 2021 by **TYLER SHAPIRO** and **ANTHONY SHAPIRO**. (*See* Exhibit 1). Its principal place of business located in the State of Illinois. Defendant **NEWERA TIX, LLC** is in the business of selling tickets on the secondary market to a wide array of sports and entertainment events throughout North America.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper in this Court as this is a claim brought under the Federal Computer Fraud and Abuse Act, 18 U.S.C. §1030. This Court would also have subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity between the Plaintiff and Defendants and the amount in controversy exceeds $75,000 (as explained below), exclusive of attorneys' fees and costs. This Court also has supplemental jurisdiction over the state law claims alleged herein as provided in 28 U.S.C. § 1367(a).

7.      Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff resides in, and the Defendants conduct business in, and some or all of the events giving rise to Plaintiff's claims occurred in Lee County, Florida, which is within the Middle District of Florida. Venue is

DocuSign Envelope ID: E2133303-FD4B-44A2-910D-9D59BA8E513C

proper in the Fort Myers Division under Local Rule 1.02(b)(5) since the action accrued primarily in Lee County, which is within the Fort Myers Division.

## GENERAL ALLEGATIONS

8.      The Plaintiff has developed a unique system for selling, servicing and/or delivering tickets to marquee events through the use of its contacts, contractors, lists, proprietary products, computer methodologies and methods of operation.

9.      The Plaintiff places great emphasis on developing on-going customer and vendor relations by providing quality services specifically tailored to the needs of each customer.

10.     The Plaintiff has spent many years and considerable sums of money developing its present customer base, its prospective customers, its referral sources, its vendor relationships, its business plans, and competitive pricing.

11.     The Plaintiff has invested great time, effort, and money in developing confidential information and knowledge relating to customers, potential customers, including, without limitation, customer names, customer decision-makers, and customer needs. The Plaintiff has invested great time, effort, and money in developing confidential information and knowledge relating to vendors, potential vendors, including, without limitation, vendor names and vendor decision-makers.

DocuSign Envelope ID: E2133303-FD4B-44A2-910D-9D50BA3E513C

12. The Plaintiff has invested great time, effort, and money in developing confidential business information relating to its business methods, technology, business plans, marketing plans, sales methods and other technical or business information and data.

13. The Plaintiff's confidential business and customer information is not known outside of the Plaintiff. This information could not be learned by others, even by expending considerable time, effort, and expense equivalent to the time, effort, and expense devoted by the Plaintiff to gathering, updating, and compiling this data. The Plaintiff takes reasonable measures to protect this information.

14. The Plaintiff's confidential business and customer information is not readily ascertainable by the public. The information on the Plaintiff's customers and vendors was compiled by the Plaintiff during years of operation and could not be replicated by, for example, looking at the Yellow Pages, Google or similar means. It has taken significant time, effort, and expense for the Plaintiff to compile this information.

15. The information contained in the Plaintiff's customer/vendor lists is not available to the public, and the goodwill developed by the Plaintiff depends on its ability to anticipate and meet each customer's particularized needs with respect to services and pricing.

16. To ensure the confidentiality of its customer information, the Plaintiff limits access to its confidential information, and requires employees to

DocuSign Envelope ID: E2133303-FD4B-44A2-910D-9D50BA8E513C

sign an Employment Agreement that includes a strict confidentiality, non-disclosure, and non-compete agreement.

17.     The Plaintiff's personnel, and the personnel of its affiliated companies with access to such information, are instructed not to show confidential information to outside persons, and all confidential and proprietary materials are required to be returned whenever a person's employment ends.

18.     **TYLER SHAPIRO** began his employment with the Plaintiff on November 2, 2019 and was employed as its "Director of Inventory and Analytics." His brother, **ANTHONY SHAPIRO**, began his employment on or about April 28, 2021, and was employed as a Director of Inventory and Analytics.

19.     Upon beginning his employment, **TYLER SHAPIRO** was required to – and did – agree to the terms contained in the Employment Agreement, which he executed and returned to the Plaintiff via email on November 2, 2019. *See* Exhibit 2.

20.     **TYLER SHAPIRO** agreed to faithfully execute his duties and further agreed at §5 to maintain the Plaintiff's proprietary information in strict confidence:

> TYLER SHAPIRO recognizes that BOXOFFICETOO, INC. has and will have information regarding processes, technical matters, trade secrets, prices, costs, business affairs, future plans, personal information of business contacts and other vital information items (collectively, "Information") which are valuable, special and unique assets of BOXOFFICETOO, INC. TYLER SHAPIRO agrees that TYLER SHAPIRO will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate any Information to any third party without the prior written consent of

BOXOFFICETOO, INC. TYLER SHAPIRO will protect the Information and treat it as strictly confidential. A violation by TYLER SHAPIRO of this paragraph shall be a material violation of this Contract and will justify legal and/or equitable relief.

21.     **TYLER SHAPIRO** specifically agreed ay §7 that even after his employment with the Plaintiff ended: "The confidentiality provisions of this Contract shall remain in full force and effect in perpetuity after the voluntary or involuntary termination of TYLER SHAPIRO's employment."

22.     Furthermore, **TYLER SHAPIRO** agreed at §8 that as a condition of employment, he would not compete with the Plaintiff:

> TYLER SHAPIRO recognizes that the various items of Information are special and unique assets of the company and need to be protected from improper disclosure. In consideration of the disclosure of the Information to TYLER SHAPIRO, TYLER SHAPIRO agrees and covenants that during his employment by BOXOFFICETOO, INC. and for a period of 2 years following the termination of TYLER SHAPIRO's employment, whether such termination is voluntary or involuntary, TYLER SHAPIRO will not directly or indirectly engage in any business competitive with BOXOFFICETOO, INC.
>
> Directly or indirectly engaging in any competitive business includes, but is not limited to: (i) engaging in a business as owner, partner, or agent, (ii) becoming an employee of any third party that is engaged in such business, (iii) becoming interested directly or indirectly in any such business, or (iv) soliciting any customer of BOXOFFICETOO, INC. for the benefit of a third party that is engaged in such business. TYLER SHAPIRO agrees that this non-compete provision will not adversely affect TYLER SHAPIRO's livelihood.

23.     And in order to continue to protect its trade secrets and proprietary methods, the Plaintiff required – and **TYLER SHAPIRO** agreed in §14 – that he would return all confidential and proprietary information of the Plaintiff:

Upon termination of this Contract, TYLER SHAPIRO shall deliver to BOXOFFICETOO, INC. all property which is BOXOFFICETOO, INC.'s property or related to BOXOFFICETOO, INC.'s business (including, records, notes, data, memoranda, models, and equipment) that is in TYLER SHAPIRO's possession or under TYLER SHAPIRO's control.

24. **TYLER SHAPIRO** further agreed at §6:

If it appears that TYLER SHAPIRO has disclosed (or has threatened to disclose) Information in violation of this Contract, BOXOFFICETOO, INC. shall be entitled to an injunction to restrain TYLER SHAPIRO from disclosing, in whole or in part, such Information, or from providing any services to any party to whom such Information has been disclosed or may be disclosed. BOXOFFICETOO, INC. shall not be prohibited by this provision from pursuing other remedies, including a claim for losses and damages.

25. However, despite agreeing in writing to retain Plaintiff's trade secrets and proprietary information in strict confidence, not to disclose the same, and not to engage in a competitive business with the Plaintiff for a period of 2-years following the termination of his employment, **TYLER SHAPIRO** did the exact opposite.

26. More specifically, upon learning Plaintiff's business model and pricing (and observing how lucrative Plaintiff's business was), **TYLER SHAPIRO** and **ANTHONY SHAPIRO** hatched a plan to discretely begin their own ticket brokerage business and siphon business away from the Plaintiff and improperly divert it to their new company.

27. On March 26, 2021, **TYLER SHAPIRO** and **ANTHONY SHAPIRO** put their plan into motion and misappropriated the Plaintiff's trade secrets – and

DocuSign Envelope ID: E2433303-FD4B-44A2-910D-9D58BA8F513C

particularly pricing methods – by opening their Illinois company while still employed by the Plaintiff.

28.     Instead of utilizing their working hours for the fulfillment of their job duties with the Plaintiff, **TYLER SHAPIRO** and **ANTHONY SHAPIRO** surreptitiously began misappropriating the Plaintiff's trade secrets and began directly competing with the Plaintiff through **NEWERA TIX, LLC**. This was concealed from the Plaintiff's owner, who was unaware of their actions.

29.     On or about August 24, 2021, the Plaintiff terminated the employment of **TYLER SHAPIRO** because it appeared to the Plaintiff's owner that **TYLER SHAPIRO** was not fulfilling the duties assigned to him. At that time, the Plaintiff withdrew **TYLER SHAPIRO**'s access to the Plaintiff's electronic computer systems. The Plaintiff also had concerns that **ANTHONY SHAPIRO** was not adequately performing his job duties but elected to maintain his employment due to the immediate needs of the Plaintiff's business.

30.     On or about September 17, 2021, the Plaintiff's owner noticed that tickets for several Baltimore Orioles baseball games he had previously instructed **TYLER SHAPIRO** and **ANTHONY SHAPIRO** to obtain were not in the Plaintiff's possession.

31.     Concerned, the Plaintiff's owner then did research and discovered an Illinois business that appeared suspicious. Accordingly, he ran a search of the Illinois Secretary of State's database, and (i) learned that **NEWERA TIX, LLC** was

owned by **TYLER SHAPIRO** and **ANTHONY SHAPIRO**, (ii) that it had been in existence since March 26, 2021, and (iii) that it was active. The Plaintiff's owner investigated and discovered that the very Baltimore Orioles tickets he asked **TYLER SHAPIRO** and **ANTHONY SHAPIRO** to obtain were actually posted for sale online by some other company. Suspicious, the Plaintiff's owner then arranged for the purchase of the Orioles tickets he saw posted online and learned that they had been sold by **NEWERA TIX, LLC**. The Plaintiff's owner investigated further by comparing the prices for tickets to events he held with those that appeared to be owned by **NEWERA TIX, LLC** and discovered that not only had **TYLER SHAPIRO** and **ANTHONY SHAPIRO** wrongly diverted business away from the Plaintiff for their own company, but they also were – and still are – deliberately undercutting the Plaintiff's pricing on the tickets the Plaintiff held for the same games. By virtue of their employment with the Plaintiff, **TYLER SHAPIRO** and **ANTHONY SHAPIRO** had intimate knowledge of the Plaintiff's pricing.

32.     Thereafter, the Plaintiff investigated even further and discovered that this scheme appeared to have been going on since April 2021 and that it appeared **TYLER SHAPIRO** and **ANTHONY SHAPIRO** had illegally diverted at least $500,000 of the Plaintiff's ticket sales during just those 6-months to **NEWERA TIX, LLC**. To date, the Plaintiff's owner has observed countless tickets being posted for sale online by **TYLER SHAPIRO** and **ANTHONY SHAPIRO** through **NEWERA**

**TIX, LLC**. The Plaintiff immediately terminated **ANTHONY SHAPIRO**'s employment on September 19, 2021.

33. The Plaintiff has also learned that **TYLER SHAPIRO** and **ANTHONY SHAPIRO** have continued to access its electronic and computer systems, which contain business methods, contacts, vendors and pricing information, and have engaged in unauthorized access, collection, and dissemination of this confidential, proprietary information in violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. §1030 and Florida's Computer Abuse and Data Recovery Act (CADRA), as provided for in § 668.801 of the Florida Statutes.

34. **TYLER SHAPIRO** and **ANTHONY SHAPIRO**, through **NEWERA TIX, LLC**, have solicited current, former, and prospective customers and vendors of the Plaintiff in the geographic regions in which they both operate.

35. Since at least April 2021, **TYLER SHAPIRO** and **ANTHONY SHAPIRO** have been directly competing with the Plaintiff through **NEWERA TIX, LLC**.

36. Since at least April 2021, **TYLER SHAPIRO** and **ANTHONY SHAPIRO** have breached their duty of loyalty by siphoning business away from the Plaintiff in order to line their own pockets through **NEWERA TIX, LLC**, a business that is directly competitive to the Plaintiff as it sells tickets throughout North America, just like the Plaintiff.

37.     Since April 2021, **TYLER SHAPIRO** and **ANTHONY SHAPIRO** have embezzled at least $500,000.00 from the Plaintiff.

38.     **TYLER SHAPIRO** and **ANTHONY SHAPIRO** will continue to engage in improper conduct in violation of the Agreement, and the Plaintiff will continue to suffer irreparable injury, unless **TYLER SHAPIRO**, **ANTHONY SHAPIRO** and **NEWERA TIX, LLC** are restrained by this Court.

39.     All conditions precedent to the maintenance of this action have been performed, excused, waived, or have otherwise occurred.

## COUNT I – BREACH OF CONTRACT – TYLER SHAPIRO

40.     The Plaintiff re-alleges and incorporate by reference the allegations in paragraphs 1 through 39 as if set forth herein.

41.     This is a claim for breach of the Agreement.

42.     The Agreement between **TYLER SHAPIRO** and the Plaintiff is a valid and enforceable contract.

43.     The Plaintiff has performed all of its obligations under the Agreement.

44.     **TYLER SHAPIRO** has breached the Agreement by, among other things, creating and working for a direct competitor, which competes in the same geographic territory for which they performed services for the Plaintiff.

45.     As a result of **TYLER SHAPIRO**'s breaches of the Agreement, the Plaintiff has been damaged, and faces irreparable injury. Moreover, the Plaintiff is

DocuSign Envelope ID: 52132303-FB4B-44A2-910D-9D59RA8E53C

threatened with the future loss of customers and prospective customers and income in an amount which may be impossible to determine because of their actions.

46.    The Plaintiff has no adequate remedy at law for **TYLER SHAPIRO**'s breaches.

47.    The Plaintiff is suffering and will continue to suffer irreparable harm because of the breaches described herein.

48.    The Agreement provides the Plaintiff a clear right to equitable relief and such relief would not be contrary to the interest of the public, generally.

49.    Accordingly, the Plaintiff demands that **TYLER SHAPIRO** return any Confidential Information in his possession and that he be enjoined from:

   a. engaging in any business that competes with the Plaintiff for a period of 2-years;

   b. soliciting the Plaintiff's vendors, customers, prospective customers, or employees as set forth in the Agreement;

   c. disclosing or using any of the Plaintiff's confidential information;

   d. diverting business or otherwise engaging in conduct that would tend to divert business from the Plaintiff; and

   e. taking any other actions in violation of the Agreement.

50.    Immediate injunctive relief is required to limit the Plaintiff's irreparable injury to that which has already occurred.

13

DocuSign Envelope ID: 52132303-FB4B-44A2-910D-9D59RA8E53C

51.     In the event of **TYLER SHAPIRO**'s breach of the Agreement, the Plaintiff is entitled to recover an amount equal to the greater of any sum received by **TYLER SHAPIRO** from a third party as a result of any action taken in breach of the Agreement or the sum that the Plaintiff would generally charge to third persons in the ordinary course of business for the benefits received by such persons as a consequence of **TYLER SHAPIRO**'s breach of the Agreement.

52.     Pursuant to F.S. §542, the Plaintiff is entitled to recover its reasonable attorneys' fees.

WHEREFORE, the Plaintiff requests that this Court enter judgment in its favor, and against **TYLER SHAPIRO** as follows:

i.  enjoining **TYLER SHAPIRO** from violating the Agreement as set forth herein above;

ii.  awarding the Plaintiff its costs and attorneys' fees incurred in this action;

iii.  awarding the Plaintiff its damages that it has suffered as a result of **TYLER SHAPIRO**'s breaches, including ordering disgorgement of his profits or revenues realized as a result of his wrongful conduct and disgorgement of bonus monies paid to him by the Plaintiff;

iv.  extending the term of **TYLER SHAPIRO**'s restrictive covenants; and

v.  awarding such other relief as may be appropriate.

### COUNT II- VIOLATION OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030 – TYLER SHAPIRO & ANTHONY SHAPIRO

53.     Plaintiff incorporates by reference Paragraphs 1-39 as if fully set forth herein.

54.     Title 18 U.S. Code § 1030 governs fraud and related activity in connection with computers and provides, in relevant part, that anyone who "(2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer;" or who "(4)knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value . . ." has violated this law. 18 U.S.C. § 1030.

55.     18 U.S.C. § 1030(g) provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." *Id*.

56.     **TYLER SHAPIRO** and **ANTHONY SHAPIRO,** through their access to the Plaintiff's computer system, knowingly entered into the Plaintiff's computer system without authorization to steal and embezzle money and property belonging to the Plaintiff, in excess of five hundred thousand dollars ($500,000).

57.     The Plaintiff suffered damages by the loss of this substantial sum of money as a result of **TYLER SHAPIRO** and **ANTHONY SHAPIRO**'s violation of 18 U.S.C. § 1030.

58.     **TYLER SHAPIRO** and **ANTHONY SHAPIRO** knowingly and unlawfully downloaded, shared, disseminated, and, notwithstanding the Agreement requiring return of all confidential information, keeping in their possession confidential, proprietary, and financial information belonging to the Plaintiff.

59.     The Plaintiff suffered damages and continues to suffer damages as a result of **TYLER SHAPIRO** and **ANTHONY SHAPIRO**'s obtaining and disseminating confidential and financial information in violation of 18 U.S.C. § 1030.

WHEREFORE, the Plaintiff demands compensatory damages against **TYLER SHAPIRO** and **ANTHONY SHAPIRO** for their violation of 18 U.S.C. § 1030, and attorney's fees and costs, the immediate return of any and all Plaintiff's documents and information still in **TYLER SHAPIRO** and **ANTHONY SHAPIRO**'s possession, together with such other and further relief as this Court deems just and proper.

DocuSign Envelope ID: E2132303-FB4B-44A2-910D-9D59RA8E513C

## COUNT III – MISAPPROPRIATION OF TRADE SECRETS – TYLER SHAPIRO & ANTHONY SHAPIRO

60.     Plaintiff incorporates by reference Paragraphs 1-39 as if fully set forth herein.

61.     The information and documents taken by **TYLER SHAPIRO** and **ANTHONY SHAPIRO** are trade secrets as defined in F.S. §688.002(4). These documents contain information not known to the public, which derive independent economic value.

62.     The information taken by **TYLER SHAPIRO** and **ANTHONY SHAPIRO** is not known outside of Plaintiff's business.

63.     The Plaintiff took measures to protect this information, including restricting access to such information.

64.     **TYLER SHAPIRO** and **ANTHONY SHAPIRO**'s misappropriated the trade secrets of the Plaintiff.

65.     As a result of **TYLER SHAPIRO** and **ANTHONY SHAPIRO**'s misappropriation of trade secrets, the Plaintiff has suffered and continues to suffer damages.

WHEREFORE, the Plaintiff demands compensatory damages against **TYLER SHAPIRO** and **ANTHONY SHAPIRO**, the immediate return of any and all Plaintiff's documents and information still in **TYLER SHAPIRO** and

DocuSign Envelope ID: 52132303-FB4B-44A2-910D-9D59BA8E513C

**ANTHONY SHAPIRO**'s possession, an award of attorney's fees and costs, together with such other and further relief as this Court deems just and proper.

## COUNT IV – BREACH OF DUTY OF LOYALTY–<br>TYLER SHAPIRO & ANTHONY SHAPIRO

66.     Plaintiff incorporates by reference Paragraphs 1-39 as if fully set forth herein.

67.     The Plaintiff placed **TYLER SHAPIRO** and **ANTHONY SHAPIRO** in positions of trust and confidence.

68.     **TYLER SHAPIRO** and **ANTHONY SHAPIRO** accepted their respective positions and promised to act in the Plaintiff's best interest, but they failed to do so.

69.     During the employment relationship, **TYLER SHAPIRO** and **ANTHONY SHAPIRO** abused their positions of trust to wrongfully divert business away from their employer – the Plaintiff – and line their own pockets while feigning loyalty to the Plaintiff.

70.     **TYLER SHAPIRO** and **ANTHONY SHAPIRO** engaged in disloyal acts in anticipation of their future competition and in furtherance of their actual competition, such as using confidential information acquired during the course of their employment and soliciting customers and vendors prior to the end of their employment with the Plaintiff.

71.     **TYLER SHAPIRO** and **ANTHONY SHAPIRO** breached their duties of loyalty to Plaintiff.

72.     **TYLER SHAPIRO** and **ANTHONY SHAPIRO**'s breach caused Plaintiff to suffer damages.

WHEREFORE, the Plaintiff demands compensatory damages against **TYLER SHAPIRO** and **ANTHONY SHAPIRO**, the immediate return of any and all Plaintiff's documents and information still in **TYLER SHAPIRO** and **ANTHONY SHAPIRO**'s possession, an award of attorney's fees and costs, together with such other and further relief as this Court deems just and proper.

### COUNT V – TORTIOUS INTERFERENCE – NEWERA TIX, LLC

73.     Plaintiff incorporates by reference Paragraphs 1-39 as if fully set forth herein.

74.     **TYLER SHAPIRO** executed restrictive covenants on November 2, 2019 in consideration for being employed by the Plaintiff.

75.     **NEWERA TIX** is aware of this because **TYLER SHAPIRO** is an officer or director of **NEWERA TIX, LLC**.

76.     The continued employment of **TYLER SHAPIRO** is an intentional and unjustified interference with the restrictive covenants.

77.     As a result of **NEWERA TIX, LLC**'s tortious interference, the Plaintiff has suffered and will continue to suffer irreparable harm and damages.

WHEREFORE the Plaintiff demands compensatory damages against **NEWERA TIX, LLC**, the immediate return of any and all Plaintiff's documents and information still in **TYLER SHAPIRO** and **ANTHONY SHAPIRO**'s possession, together with such other and further relief as this Court deems just and proper.

## COUNT VI – INJUNCTIVE RELIEF – ALL DEFENDANTS

78.    Plaintiff incorporates by reference Paragraphs 1-39 as if fully set forth herein.

79.    **TYLER SHAPIRO** knowingly and voluntarily entered into the Agreement, which contains valid restrictive covenants.

80.    **TYLER SHAPIRO** knowingly and voluntarily breached the valid restrictive covenants and continues to do so with the aid of **ANTHONY SHAPIRO** for the benefit of **NEWERA TIX, LLC**.

81.    All Defendant continue to possess and use the Plaintiff's trade secrets in violation of Florida law.

82.    **TYLER SHAPIRO** continues to violate his restrictive covenants and both **TYLER SHAPIRO** and **ANTHONY SHAPIRO** continue to possess and use the Plaintiff's trade secrets on behalf of **NEWERA TIX, LLC**.

83.    **NEWERA TIX, LLC** is aware of the restrictive covenants and possession of Plaintiff's trade secrets because its owners/managers are Defendants **TYLER SHAPIRO** and **ANTHONY SHAPIRO**.

DocuSign Envelope ID: 52132303-FB4B-44A2-910D-9D59RA8E513C

84.     Allowing **NEWERA TIX, LLC** to continue to operate with **TYLER SHAPIRO** as an officer, director or employee represents the intentional and unjustified interference with the restrictive covenants, which will cause irreparable harm to the Plaintiff unless such conduct is enjoined.

85.     The Defendants' continuing actions will constitute irreparable harm to the Plaintiff absent the granting of the requested injunctive relief.

86.     There is no adequate remedy at law available to the Plaintiff.

87.     The Plaintiff has a substantial likelihood of success on the merits.

88.     The granting of injunctive relief will serve the public interest.

89.     The injury to the Plaintiff outweighs any damage an injunction might cause the Defendants.

90.     As a result, the Plaintiff is entitled to injunctive relief arising out of **TYLER SHAPIRO** continued violation of his restrictive covenants and both **TYLER SHAPIRO** and **ANTHONY SHAPIRO's** continued possession and use of the Plaintiff's trade secrets on behalf of **NEWERA TIX, LLC**.

WHEREFORE the Plaintiff respectfully demands injunctive relief, as follows:

           i.   That **TYLER SHAPIRO** be temporarily and permanently enjoined from further violations of the restrictive covenants contained in the Agreement;

    ii.  That **TYLER SHAPIRO**, **ANTHONY SHAPIRO** and **NEWERA TIX, LLC** be enjoined from the continued use or possession of the Plaintiff's trade secrets;

    iii.  That the Plaintiff be awarded its reasonable attorney's fees and costs, and;

    iv.  Any such relief as this Court deems just and equitable.


Respectfully submitted,


Dated: September 28, 2021    **/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
9990 Coconut Road
Bonita Springs, Florida 34135
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com


## Verification

I, Rene Gauthier, verify the above facts under 28 U.S.C. §1746 and hereby declare under the penalty of perjury that the facts alleged above are true and correct.


Executed: 9/28/2021

*Rene Gauthier*

Mr. Rene Gauthier
Owner
BOXOFFICETOO, INC.

22